At this time, we'll hear DiLorenzo v. The Viceroy Hotel Group. Thank you. Thank you. Good morning, Your Honors. Christopher Desmond on behalf of Annette DiLorenzo. Your Honors, I stated before an oral argument I'd like to reserve one minute for rebuttal, which I know is not very much, but in the context of a five-minute argument, it's pretty beefy. This started out as a pro se argument, and I know counsel's here, so I wouldn't worry too much about that. Was Ms. DiLorenzo originally not, did she not have counsel? No, Ms. DiLorenzo has been represented by us. There's one other defendant who is not represented here. That's Ricketts and Associates, who was the owner of the Anacayona Hotel, which was the hotel that my client was a guest of at the time of this assault. So, Your Honors, I'd like to start today. We made an argument in our brief regarding two different justifications for the district court asserting jurisdiction in this case, that's sections 301 and 302 of New York law. And so I want to start with 301. 301 is the concept of general jurisdiction, which I think is the stronger argument, to be frank, relative to the defendant that does have representation today. And so under section 301, there is jurisdiction over a defendant if they have systematic and continuous contacts with this jurisdiction. And in determining whether or not such contacts exist, the courts look to a number of factors, including, I think relevant to this case, whether or not that defendant conducts PR operations, public relations operations within the jurisdiction, and whether or not they have any employees or agents that are located within this jurisdiction to continuously represent their interests. And so- Do they? Well, we believe they do, Your Honor. First of all, we know from their discovery responses, the limited discovery responses we were able to receive. We know that they've hired a firm inside of New York to help them with their website. They initially set up their booking mechanism in their website, and they maintain that website to this day, I believe. But the website is what interfaces with customers. That's right. It's a highly interactive website in which individuals inside of New York can fully book rooms without having to interact with any intermediary party. You're saying it's a public relations firm if it is a firm that develops websites. I believe that's a fair reading of the law, Your Honor. Yeah, I believe that the fact that this is a firm that is assisting a foreign entity to conduct business with New Yorkers is essentially their- With New Yorkers and with Vermonters and with- That's correct. Idahoans and everybody else. That's correct, Your Honor. That's correct. Now, we don't know which percentage of the bookings done through this website for this particular defendant were New Yorkers. But I can tell you that for the other defendant involved in this case, it's a full 13% of that hotel's business. Which is a substantial amount considering that the average state in the United States is about 1.8% of the other defendant's hotel business. I don't know whether or not it would track with the other defendant, whether they would have a similar proportion. But part of that is because of the lack of discovery that we were entitled to do. Which I really think, Your Honor, is the crux of our argument. Is that there should have been a fuller opportunity to be able to depose individuals. Once we started to get into discovery and we were limited to written discovery. Once it was revealed that this defendant does employ a firm inside of New York. This defendant does have an officer who resides in the greater New York City area and works in the greater New York City area. Once we had some indication that there were more contacts here than someone may have anticipated at the outset of the case. The proper thing for the district court judge to do would have been to allow us to have additional discovery. Just related to the issue of jurisdiction. We weren't trying to have liability related discovery yet. But just to be able to talk to individuals, to take depositions. You asked for additional?  And what the district court judge said was that he didn't consider that to be a sufficient request. But then he said that even if we had requested it through alternative motions, he would have denied it because he didn't think that we had made a sufficient showing to justify that additional discovery. Did I hear you correctly say that you think this falls under 301? I believe it does, relative to this defendant. Well, but that's general jurisdiction as kind of like under Daimler Chrysler, isn't it? That's correct, Your Honor. And Daimler Chrysler's view of this is like state of incorporation or your home basis. And that's not this corporation at all. It's a corporation that does business in the Caribbean. A website is not, A, they're not incorporated here, and B, their home office isn't here. So I don't understand how you're under 301 at all. If anything, you're under 302. And then you've got to have transacting business and the claim arising out of the transaction. Correct, Your Honor. So I mean, this would stretch general jurisdiction beyond its constitutional norm, wouldn't it? I don't believe it would, Your Honor. And I understand that- So if I have a website, I'm a Delaware corporation with my home office in Delaware, Wilmington, Delaware. And I have a website that 5% or 10% or 13% of my business comes from New York. I'm generally present in New York for general jurisdictional purposes. If it was limited to those facts, Your Honor, I don't think I could necessarily say you were or weren't. But I don't think we're limited to those facts, respectfully. What other facts do you have? We have the additional fact of an officer from the company being located in the New York area. Now, what he does on behalf of the company while he's in- An officer? He's an officer, correct. And he's permanently here? That's my understanding, Your Honor. Roy Shanholz, I believe is his name, is according to, and this is the first- Donald Chrysler had thousands of first ladies' bends in California. They weren't there for general purpose, general jurisdictional purposes. Take their facts, and they're far more substantial presidents in California, and they weren't there? To be fair, Your Honor, what I would respond to with- Fair? With that, well, yeah, I'm not saying you're not- You're suggesting I'm not a- I'm not at all suggesting that you're not being fair. But what I am saying, Your Honor, is that- I'll just give you a hard time. With jurisdiction, the benefit that they had in that case was being able to find out- And also wedded to general jurisdiction. I mean, that is such a steep hill you're trying to climb. And Justice Ginsburg's opinion of Donnelly Chrysler is a tough . . . she made it even steeper. But I don't believe what she made steeper is the access to discovery. You're going to get reversed if we find there's general jurisdiction here. They won't even issue an opinion. It'll be reversed. See Donnelly Chrysler. You don't think so? No, I don't, Your Honor. Okay. I don't, and again, it's relative to this defendant. Now, on the other defendant, on the Ricketts and Associates defendant, I think we have jurisdiction under both general and under 302 under the specific jurisdiction through the long arm statute. I don't think there's any question. But I do think with- The Precious Act outside that has consequences inside the state of New York. What's, I apologize, Your Honor, I won't- The long arm jurisdiction. So I have a vague familiarity with section 302 of the CQI. 302A1? Yeah. You're arguing 302A1? Yes, so on- What transaction of business in New York gave rise to this loss, which took place in a foreign country? So it was a combination for the other defendant. It was a combination of their targeting advertisements to the New York area along with the booking of the hotel room in New York through that company's website. So our client transacted business with Ricketts and Associates after receiving advertisements and publications from the Ricketts defendants advertising their property, wrote- I own a home in Denver, or in Aspen, and I use Airbnb to rent it out. And 10% of my business comes from Airbnb out of New York. Am I present in New York for a transacting business? I don't think so. Your Honor, if you have an agent who's present in New York, specifically advertising to New Yorkers, attending travel shows in New York, participating in promotional activities in New York, I think that potentially changes the calculus. Okay, okay. And what I would say, again respectfully, Your Honors, is that to me the primary concern is just ensuring that we have proper discovery with the limited facts that we have uncovered so far. You've reserved a minute to rebut. I have, thank you. Thank you. May it please the court, my name is Nicholas Herzler and I represent the Viceroy at Appalese. Your Honors, I want to clear up, to start with his last point first about the discovery. The lower court made it very clear that there was a period, they could have objected to the discovery that was provided. They could have made an application for more discovery. There was some discovery provided. There was discovery on the limited issue of jurisdiction that was exchanged. There was no objection in an application for further discovery and they therefore waived the right to any further discovery and I think it's- But it was, the issue was raised in response to the motion to dismiss. The issue was raised in the response, yes. They said we want jurisdictional discovery. That was granted and then they were satisfied. I understand. I have the sequence now. With what they were given, and the lower court made clear, they should have asked for more, which they didn't do. With respect, I want to clear up an issue with Mr. Stanholz. He's not a officer of the Viceroy Defendants. He's, according to an inadmissible printout of a LinkedIn profile, which is a website, he is an officer of Starwood Capital Group, which is an entity related to one of the Viceroy Defendants, but he's not an officer of them. He, according to this inadmissible printout, he's an employee who lives in the greater New York area. It actually turns out in the record that he's from, his office is in Connecticut. He's not in New York. You look at the big picture here, you have no connection with my clients to New York in any way. They're based in California, and the BWI, and they have a license to do business in Florida and in Delaware. But their only connection to this case is they happen to be the hotel next door. They happen to employ the alleged assailant. But for purposes of jurisdiction, whether we're talking about general or specific, there's just no connection here. The only possible connection is the website, which this court has made clear, and we have plenty of precedents cited in our brief, to the effect that maintaining a website is not enough to confer general jurisdiction, nor are any of the key factors for doing business met. The existence of an office in New York, solicitation, bank accounts, property, etc. None of those key factors are present here. There is no solicitation within New York by my clients. And- The website seeking people to sign up for hotels, isn't that solicitation? It's not under the case law. The case law makes clear that just having a website, it's not purposely directed to New York. It's accessible from anywhere in the world. There's no part, the plaintiff has never alleged or proven that any part of the website is directed towards New York, which would be required under the solicitation plus theory. I think the record speaks for itself. I mean, we have an alternative ground of vicarious liability that this was an intentional tort by the employee, alleged employee, which could not be imputed. The lower court did not reach that issue. I don't think we need to, we need, even need that, or that this court even needs to reach it. Unless the court has any questions, I'll rest on my brief. Thank you. Thank you for listening. Thank you. Just to explain my understanding of what happened with the discovery process in this case. I believe pursuant to Judge Broderick's protocols and court rules, local rules, the defendants sought leave with Judge Broderick in conjunction with their first response of pleadings to file a motion to dismiss. Judge Broderick then held a judicial conference which we attended. At that conference, Judge Broderick instructed that there was to be limited written discovery through the process of interrogatories and requests to produce. He then stated that following that limited discovery, the defendants could bring their motions to dismiss. We engaged in that limited written discovery, had no access to depositions. Then when they filed their motions to dismiss, pursuant to Judge Broderick's instructions, we responded that this is what we received in response to our interrogatories. We essentially received a series of objections and no responses. And we believe that under the judge's initial ruling, it would be proper to deny these motions or hold them in abeyance so that further discovery can be obtained. Thank you. Thank you both. We'll hear a decision. In the case of Hnatuk versus Sessions, we're taking that on submission. That's the last case on calendar. Please adjourn to court.